UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE AMERICAN EXPRESS ANTI-STEERING RULES ANTITRUST LITIGATION (II) | Master File No.: 11-MD-02221 (NGG)(RER) |
| This Document Relates to:<br><br>ALL CASES | |

**INDIVIDUAL MERCHANT PLAINTIFFS' SUPPLEMENT
IN OPPOSITION TO THE PROPOSED CLASS SETTLEMENT**

The Court has requested comment on how the Court's review of the proposed class settlement is affected by: (1) the Court's Decision and Permanent Injunction in the Government case and (2) the communications between class lead-counsel, Gary Friedman, and MasterCard counsel, Keila Ravelo. The Individual Merchant Plaintiffs' ("Individual Plaintiffs")[1] comments are set forth below.

**I.   Introduction**

As direct litigants against American Express ("Amex") since 2008 and as direct litigants against Visa and MasterCard in MDL 1720 since 2005, the Individual Plaintiffs have been focused on why merchant fees in the United States are among the highest in the world and what must be done to introduce competition into the payment network services market. The flaw in the system has been clearly analyzed by this Court in its well-reasoned *U.S. v. Amex* Decision (10-cv-04496 at D.E. 619) ("Decision") and was also identified by Judge Gleeson in his Decision approving the

---

[1] Ahold U.S.A., Inc.; Albertsons LLC; BI-LO LLC; CVS Health, Inc.; The Great Atlantic and Pacific Tea Company, Inc.; H.E. Butt Grocery Co.; Hy-Vee, Inc.; The Kroger Co.; Meijer, Inc.; Publix Super Markets, Inc.; Raley's Inc.; Rite Aid Corporation; Safeway Inc.; SuperValu, Inc.; and Walgreen Co.

Class settlement in MDL 1720.[2] The Individual Plaintiffs have had a front row seat in both cases and have been close enough to be heard by both the Department of Justice as it fashioned Consent Decrees with Visa and MasterCard and by Class Counsel in MDL 1720 as they fashioned relief to open the door to reform in this industry. It has been clear from the day that Judge Gleeson approved the Class settlement in MDL 1720 that the Amex non-discrimination provision (NDP) and its application to prevent differentiated treatment of payment cards at the point of sale has remained the final roadblock to the reforms that merchants and the law of competition require.

As we explain below, the Individual Plaintiffs submit that the points and authorities already in the record in connection with the Fairness Hearing showed why the proposed Amex settlement should not be approved. The Court's Decision and Injunction now provide further support for the Court to deny the Class's motion because the reforms won by the DOJ in *U.S. v. Amex* render the Class's proposed relief even more worthless. This is so even if the Class's lead counsel, Mr. Friedman, and MasterCard's counsel (and Class adversary), Ms. Ravelo, had been models of propriety.

## II.     The Court's Decision and Injunction in the Government Case

### A.     Overview

Before this Court's Decision, the Court's expert had already determined that "there was a substantial probability that [the proposed Amex class settlement's] effect will be small or zero."[3] The Decision confirms that the proposed settlement is completely worthless and most certainly undermines a ten-year struggle for complete reform.

---

[2]     *See In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 986 F. Supp. 2d 207, 230-233 (E.D.N.Y. 2013).

[3]     Report of Professor C. Scott Hemphill at 42 (Aug. 11, 2014).

The essential and virtually only effect of the proposed class settlement is to permit Visa, MasterCard, and Amex to prevent differential surcharging for as long as the settlement agreement is in force. It allows MasterCard and Visa to roll back reforms on differential surcharging that those networks reluctantly agreed to after the merchant class fought for them in MDL 1720. The proposed settlement also allows Amex to avoid its day of reckoning on the one reform that the entire industry recognizes as the most immediate, direct, and impactful on pricing – differential surcharging.

This Court was clear that the Government has "proven by the preponderance of the evidence that Amex's NDPs have imposed actual, concrete harms on competition in the credit and charge network services market. The challenged restraints interrupt the ordinary price setting mechanism in this market by taking away a network's reward for competing on the basis of price, and thereby removing any network incentive to do so." Decision at 127.

By focusing on the entire price setting mechanism – a concept called unbundled pricing – the Individual Plaintiffs have developed a compelling factual record showing that there is no analytical difference between the differential discounting prohibition in Amex's NDPs that the Court found unlawful under Section 1 of the Sherman Act and Amex's differential surcharging prohibition which still remains and is a critical part of the Individual Plaintiffs' case. ▉

▉
▉
▉

---

[4]   See, e.g., ▉ Dep. Ex. 4524 at AMEXNDR11228264, Ex. 1 ▉
▉ Dep. Ex. 7111 at AMEXNDR02465744, Ex. 2 ▉
▉
Individual Plaintiffs' June 6, 2014 brief objecting to the proposed class settlement sets forth several examples ▉

documents virtually mandates further reforms in light of the Court's Decision. However, if the proposed class settlement is approved, then this evidence of the overwhelming anticompetitive effects of Amex's ban on differential surcharging would be useless.

  B. The Decision and Injunction Eliminate Any Possible Benefit from the Proposed Settlement

Class Counsel sought to justify a release of Amex in consideration for "parity surcharging" relief only on the grounds that: (1) there was "risk" that Amex's legal theories would prevail and no relief would be obtained; and (2) even though parity surcharging could not stimulate competition between different credit cards, shifting customers from credit to debit cards is really "what matters." Class Final Approval Reply Br. at 22, D.E. 501 ("Class Reply Br."). Neither contention survives the Decision and subsequent Injunction in *U.S. v. Amex*. First, "risk factors" feared by the Class have been resolved against Amex by the Decision, and the "risk" that no relief will be obtained no longer applies. Second, the Injunction specifically allows merchants to steer consumers away from credit cards to debit cards. Order Entering Permanent Injunction as to the American Express Defendants (10-cv-04496 at D.E. 638) ("Injunction") § III.A.(1)-(6). Thus, the DOJ has already won the ability to engage in the type of steering that according to the Class matters most. Merchants can steer from credit to debit. *Id.* § III.A.

More specifically, in support of the proposed settlement, Class Counsel argued that Amex's "defenses pose very significant risks" that liability will not be found. Class Reply Brief at 23. According to Class Counsel, Amex's positions are "well presented [and] cogent" and presented by "some of the world's most highly regarded economic experts and lawyers." *Id.* In particular, Class Counsel argued that the case against Amex was vulnerable on the issues of market definition,

---

▬▬▬▬▬▬▬▬▬▬ *See* D.E. 399 at 30-32.

market power, and two-sided markets. *Id*. at 23-24. Class Counsel further argued that "[t]he risk of being unable to obtain any injunctive relief that would apply across the market is also extremely high." *Id*. at 24. Based on these "risk factors," class counsel argued that it chose "to sacrifice the 'flock in the bush' [*i.e.*, all other forms of steering] in order to obtain the 'bird in the hand' [*i.e.*, parity surcharging only]." Class Reply Br. at 61. Class Counsel even argued that if the proposed settlement is not approved, there will be no alternative relief "for the six million class members." *Id*. at 4.

These contentions were unpersuasive when made then and are simply wrong now. This Court has thoroughly considered and soundly rejected Amex's market power and relevant market arguments. Decision at 65-67, 98. The supposed "extremely high" risk that that six million merchants would be left with no relief at all has, likewise, come to naught. An injunction allowing merchants to engage in most forms of steering has been entered.

Class Counsel's purported justifications for the settlement are now gone. All that remains are the settlement's negative effects. Approval of the settlement would protect the credit card networks from competition, provide no benefit to the class, and deprive the Individual Plaintiffs of their opportunity to complete the reform.

Much has been won, but a very important form of steering remains unresolved. This Court has already found that steering is generally procompetitive (Decision at 3) and that "differential surcharging is the most powerful form of steering." *Id.* at 124-25. In light of the collateral estoppel effects of this Court's Decision and the undisputed facts, the Individual Plaintiffs believe they are in an extremely strong position to obtain, by either summary judgment or at trial, an order enjoining Amex from prohibiting differential surcharging. The Individual Plaintiffs strongly believe that such a decision on differential surcharging will have a market-wide effect. But even if the effect is technically limited to themselves, other merchants will be able to obtain the same relief by

bringing an arbitration and relying on the collateral estoppel effect of a ruling in favor of the Individual Plaintiffs. Amex can avoid all scrutiny of its differential surcharging prohibition if Class Counsel succeeds in releasing those claims in exchange for "parity surcharging," which Prof. Hemphill concluded would produce "small or zero" benefit for the merchants. The settlement is a terrible deal for the Class and an injustice for the Individual Plaintiffs.

### III. The Communications Between Mr. Friedman and Ms. Ravelo

The Court has requested our comments on how the approval of the proposed settlement is affected by the communications between class lead counsel, Gary Friedman, and MasterCard counsel, Keila Ravelo. Because the proposed settlement is so completely devoid of merit, we are reluctant to delve in the quagmire caused by Mr. Friedman's and Ms. Ravelo's inexcusable conduct. Mr. Friedman has so cavalierly and shockingly ignored his obligations to this Court, his colleagues, and his clients that it runs the risk of distracting us all from the real point regarding the putative class settlement.

The real point is that the proposed class settlement is a sell-out designed to accomplish nothing but to rob the merchant class in MDL 1720 of the benefit of their bargain and give Amex, MasterCard, and Visa immunity from differential surcharging – a vital component in unbundled pricing. If Mr. Friedman had been the model of propriety, it would not rescue this worthless settlement. So we are careful not to let his misconduct distract us from the real issue –a tragically flawed proposed settlement.[5]

The rather bizarre and unusual developments regarding MasterCard's former counsel, Ms. Ravelo, and the Putative Class's Lead Counsel, Mr. Friedman, present all of us with an unwelcome and unwanted glimpse into the behavior of a once trusted colleague. For reasons only he and Ms.

---

[5] Indeed, Professor Hemphill had no knowledge of the conduct between Ms. Ravelo and Mr. Friedman when he reached his conclusion about the dubious value of parity surcharging. *See* n. 3 *supra*.

Ravelo know, Mr. Friedman chose to violate the trust of colleagues, the terms of the Protective Order entered by this Court, the terms of a Common Interest Agreement between the Individual Plaintiffs, the Class, the Department of Justice, and his fiduciary duty to Putative Class members, including the Individual Plaintiffs he is trying to represent in the proposed non-opt-out mandatory (b)(2) class. Mr. Friedman chose to violate all of these commitments and obligations with an attorney for an adversary of the Class he purports to represent.

Mr. Friedman's conduct may bear on the issue of why the settlement is so flawed. Only Mr. Freidman and Ms. Ravelo know what specific impact their highly inappropriate activities had on the proposed settlement,[6] but the appearance of impropriety is inescapable. Without engaging in speculation, here is what we know.

On May 8, 2009, the Individual Plaintiffs memorialized their Joint Prosecution and Confidentiality Agreement with the MasterCard/Visa class counsel. Ex. 3. Mr. Friedman was one of the class counsel. On June 8, 2011, the Individual Plaintiffs memorialized their Common Interest Agreement with the United States and Mr. Friedman in this litigation. Ex. 4. ███████

███████████████████████████████████████████████████████████) Ex. 3 ¶¶ 2-3; Ex. 4 ¶ 2. ███████████████████████████████████████

███████████Ex. 3 ¶ 3; Ex. 4 ¶ 3,███████████████████████████████

Ex. 3 ¶ 3; Ex. 4 ¶ 6. The operative Protective Orders in this case similarly obligate Mr. Friedman to protect the confidential material of the parties and strictly prohibits the distribution of such material to any non-party. Exs. 5 and 6 ¶¶ 11, 13, 14. Mr. Friedman, as class counsel, also owed a fiduciary duty to the Individual Plaintiffs and all other putative class members to loyally protect

---

[6] Since Ms. Ravelo has been charged criminally and both she and Mr. Friedman have criminal attorneys representing them, the ability to examine this issue is unlikely.

their interests. *See, e.g., In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 216, 223 (2d Cir. 1987) (class attorneys owe "fiduciary duty to the … class"); *Friedman-Katz v. Lindt Sprungli, Inc.*, 270 F.R.D. 150, 161 (S.D.N.Y. 2010) (class counsel must "satisfy the fiduciary responsibilities that their … positions would entail").

Mr. Friedman repeatedly violated the joint prosecution agreements, this Court's Protective Order, and his fiduciary duties. Before the *MasterCard/Visa* cases settled, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *See* Ex. 7 (Appendix) at ¶¶ 2, 3, 4, 5. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *Id.* at ¶¶ 2, 3, 4, 6, 10.

Mr. Friedman also gave Ms. Ravelo attorney work product that was shared between Class Counsel and counsel for the Individual Plaintiffs in this case. *Id.* at ¶¶ 1, 2, 5. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *Id.* ¶ 9. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *Id.* ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *Id.*

Mr. Friedman also provided other documents covered by this Court's Protective Order to Ms. Ravelo. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *Id.* at ¶ 12. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆



█████████████ *Id.*

█████████████ *Id.* at ¶ 7. █████████

█████████████

*Id.* █████████████

█████████████

█████████████ *Id.* at ¶ 13. █████████

█████████████

█████████████

It is beyond question that MasterCard's interests were and continue to be adverse to the merchant class and the Individual Plaintiffs. █████████

█████████████

█████████████ The question is why.

All of this is the backdrop to a settlement negotiated by the Class Counsel whose class had been virtually destroyed in the *Italian Colors* case, rejected as a non-existent class by Amex and then suddenly revitalized as the vehicle to put forth this sell-out settlement. As the Bard once wrote: "SOMETHING IS ROTTEN IN THE STATE OF DENMARK."

IV. <u>Conclusion</u>

On the merits, the proposed class settlement still should be rejected, particularly after the Court's Decision and Injunction. On the process, Mr. Friedman should have to explain what he and Ms. Ravelo were up to. At a minimum, the appearance of impropriety would have to be removed before Mr. Friedman can continue as class counsel and his settlement approved.

Dated: June 1, 2015

Respectfully submitted,

By: /s/ Paul E. Slater
      Paul E. Slater

Paul E. Slater, Esquire
SPERLING & SLATER, P.C.
55 West Monroe Street
Suite 3200
Chicago, Illinois  60603
Tel: (312) 641-3200
Fax: (312) 641-6492
E-mail: pes@sperling-law.com

Joseph M. Vanek, Esquire
David P. Germaine, Esquire
VANEK, VICKERS & MASINI, P.C.
55 West Monroe Street
Suite 3500
Chicago, Illinois  60603
Tel: (312) 225-1500
Fax: (312) 224-1510
E-mail: jvanek@vaneklaw.com
        dgermaine@vaneklaw.com

Linda P. Nussbaum, Esquire
Susan R. Schwaiger. Esquire
NUSSBAUM LAW GROUP, P.C.
570 Lexington Avenue
19th Floor
New York, New York 10022
Tel: (212) 702-7053
Fax: (212) 681-0300
E-mail: lnussbaum@nussbaumpc.com
        sschwaiger@nussbaumpc.com

/s/ Richard Alan Arnold
      Richard Alan Arnold

Richard Alan Arnold, Esquire
William J. Blechman, Esquire
James Almon, Esquire
KENNY NACHWALTER, P.A.
201 S. Biscayne Boulevard
Suite 1100
Miami, Florida  33131
Tel: (305) 373-1000
Fax: (305) 372-1861
E-mail: rarnold@knpa.com
        wblechman@knpa.com
        jalmon@knpa.com

Eric L. Bloom, Esquire
HANGLEY ARONCHICK SEGAL PUDLIN &
 SCHILLLER
4400 Deer Path Road
Suite 200
Harrisburg, PA  17110
Tel: (717) 364-1003
Fax: (717) 364-1020
E-mail: ebloom@hangley.com

*Counsel for the Individual Merchant Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2015, I caused a true and correct copy of the foregoing document to be served via e-mail to the following counsel of record for the parties:

Craig W. Conrath, Esquire
Mark Hamer, Esquire
U.S. DEPARTMENT OF JUSTICE
Antitrust Division
450 5th Street, N.W.
Suite 4000
Washington, D.C. 20530
E-mail: Craig.Conrath@usdoj.gov
         Mark.Hamer@usdoj.gov
*Counsel for the Plaintiff United States of America*

Kevin Orsini, Esquire
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, N.Y. 10019
E-mail: korsini@cravath.com

John LaSalle, Esquire
Boies, Schiller & Flexner LLP
575 Lexington Ave. #7
New York, NY 10022
*Counsel for Defendants American Express Company and American Express Travel Related Services Company, Inc.*

Mitchell Gentile, Esquire
OFFICE OF THE ATTORNEY GENERAL
STATE OF OHIO
150 East Gay Street
23rd Floor
Columbus, Ohio 43215
E-mail: mitchell.gentile@ohioattorneygeneral.gov
*Counsel for the Plaintiff States*

By: /s/ David Germaine
    David Germaine